No. _____

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE CITY OF LOS ANGELES

CITY OF LOS ANGELES,

*Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA,

*Respondent*,

LA ALLIANCE FOR HUMAN RIGHTS ET AL.,

*Real Parties in Interest*.

From the United States District Court
for the Central District of California
Case No. 2:20-cv-02291 | The Honorable David O. Carter

## PETITION FOR A WRIT OF MANDAMUS AND EMERGENCY MOTION FOR IMMEDIATE STAY UNDER CIRCUIT RULE 27-3

### ** RELIEF REQUESTED BY 9:00 A.M. ON FEBRUARY 10, 2026 **

Hydee Feldstein Soto
Valerie Flores
Arlene N. Hoang
Jessica Mariani
CITY ATTORNEY'S OFFICE
200 North Main Street
City Hall East, 6th Floor
Los Angeles, CA  90012
213.978.7508

Theane D. Evangelis
Marcellus McRae
Bradley J. Hamburger
Daniel R. Adler
Patrick J. Fuster
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA  90071-3197
213.229.7000
tevangelis@gibsondunn.com

*Counsel for Petitioner City of Los Angeles*

## CIRCUIT RULE 27-3 CERTIFICATE

Pursuant to Circuit Rule 27-3, I hereby certify that to avoid irreparable harm to petitioner City of Los Angeles, relief is needed in less than 21 days' time.

1.     Regarding Circuit Rule 27-3(c)(i), counsel are as follows:

Theane D. Evangelis
Marcellus McRae
Bradley J. Hamburger
Daniel R. Adler
Patrick J. Fuster
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA 90071-3197
213.229.7000
tevangelis@gibsondunn.com

Hydee Feldstein Soto
Valerie Flores
Arlene N. Hoang
Jessica Mariani
CITY ATTORNEY'S OFFICE
200 North Main Street
City Hall East, 6th Floor
Los Angeles, CA 90012
213.978.7508
valerie.flores@lacity.org

*Counsel for Petitioner City of Los Angeles*

i

Matthew Donald Umhofer
Elizabeth A. Mitchell
UMHOFER, MITCHELL & KING LLP
767 S. Alameda Street, Suite 221
Los Angeles, CA 90017
213.394.7979
mumhofer@umklaw.com
emitchell@umklaw.com

*Counsel for Real Parties in Interest LA Alliance for Human Rights,
Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karen Pinsky,
Charles Malow, Charles van Scoy, George Frem, Gary Whitter,
and Leandro Suarez*

Louis R. Miller
Mira Hashmall
Jason H. Tokoro
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, CA 90067
310.552.4400
smiller@millerbarondess.com
mhashmall@millerbarondess.com
jtokoro@millerbarondess.com

*Counsel for Defendant County of Los Angeles*

Carol A. Sobel
LAW OFFICE OF CAROL A. SOBEL
725 Arizona Ave.
Santa Monica, CA 90401
310.393.3055
carolsobel@aol.com

Shayla R. Myers
LEGAL AID FOUNDATION OF LOS ANGELES
1550 West 8th Street
Los Angeles, CA 90017
(323) 801-7990
smyers@lafla.org
igeczy@lafla.org

Catherine Sweetser
SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Catherine.sdshhh@gmailcom

*Counsel for Intervenors Los Angeles Community Action Network
and Los Angeles Catholic Worker*

Brooke Weitzman
William Wise
ELDER LAW AND DISABILITY RIGHTS CENTER
1535 E. 17th Street, Suite 110
Santa Ana, CA 92705
bweitzman@eldrcenter.org
bwise@eldrcenter.org

*Counsel for Intervenor Orange County Catholic Worker*

2.     Regarding Circuit Rule 27-3(c)(ii), the facts showing the existence and nature of the claimed emergency are set forth in detail below in

iii

the Statement of the Case. In brief, the City seeks: (1) a writ of mandamus directing the district court to vacate its January 14 and February 4 orders expanding the scope of an ongoing contempt proceeding and (2) an administrative stay of the February 10 hearing that is set to address that expanded contempt hearing to ensure the Court has adequate time to consider this petition. If this emergency relief is not granted, the City will be compelled to defend itself in a contempt proceeding with inadequate notice of the charges against it, and that due-process violation has the potential for devastating consequences on the City's ability to protect its rights in parallel state-court litigation and to safeguard multiple privileges (including the attorney-client privilege and the deliberative-process privilege).

3.    Regarding Circuit Rule 27-3(c)(iii), this petition could not have been filed earlier because the issues presented were not ripe for review until today, February 9, 2026, when the district court ruled on the City's second request for clarification of the scope of the proceedings and objection to those proceedings and did not stay the February 10 hearing.

4.    Regarding Circuit Rule 27-3(c)(iv), counsel has been served the petition via e-mail. Plaintiffs indicated they will likely oppose, and

iv

Intervenors indicated that they will determine their position after reviewing the petition and motion.

5.  Regarding Circuit Rule 27-3(c)(v), as set forth in the Statement of the Case below, the City has sought—and been denied—relief from the district court.  The City filed requests for clarification on the scope of the contempt proceedings and objections to those proceedings on January 20 and February 7, and requested a stay of the February 10 hearing by 12 p.m. on February 9.  On February 9, the district court denied the request for a stay and confirmed that the hearing will commence on February 10 at 9:00 a.m. and that witness testimony may commence at that hearing.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................... 1

STATEMENT OF THE CASE .......................................................... 8

    A.    After the City is sued over its homelessness policy, the district court orders the City to set aside $1 billion, and this Court stays and then vacates the order. ......................... 8

    B.    The parties settle, but their settlement agreement becomes a wellspring of further litigation that has led to three appeals to this Court. ............................................... 10

    C.    In the course of an ongoing contempt proceeding, the district court sua sponte raises issues relating to a separate state-court proceeding that it read about in the newspaper. ............................................................... 14

STATEMENT OF THE ISSUES ...................................................... 20

RELIEF SOUGHT ............................................................................ 20

LEGAL STANDARD ....................................................................... 21

REASONS FOR GRANTING WRIT RELIEF ................................ 22

I.    The district court denied the City due process by refusing to explain the basis of its contempt charge. ...................... 22

II.    The City is likely to suffer irreparable harm that cannot be corrected on appeal. .................................................................. 27

III.    The district court has persistently disregarded the adversarial process and the City's rights. .................................. 34

IV.    The City has no other adequate means to obtain fair notice and defend itself in the expanded contempt proceeding. .............. 38

CONCLUSION ................................................................................. 39

CERTIFICATE OF RELATED CASES ...................................................... 40

CERTIFICATE OF COMPLIANCE ......................................................... 41

CERTIFICATE OF SERVICE................................................................. 42

vii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Bionics Corp. v. Medtronic, Inc.*,
 29 Cal. 4th 697 (2002)................................................................39

*In re Am. Med. Sys., Inc.*,
 75 F.3d 1069 (6th Cir. 1996)......................................................26

*Bauman v. U.S. Dist. Court*,
 557 F.2d 650 (9th Cir. 1977)......................................................21

*Cheney v. U.S. Dist. Court for D.C.*,
 542 U.S. 367 (2004)....................................................................28

*Cole v. U.S. Dist. Court for Dist. of Idaho*,
 366 F.3d 813 (9th Cir. 2004).......................................................23

*Daly v. San Bernardino County Board of Supervisors*,
 11 Cal. 5th 1030 (2021)...........................................29, 31, 38

*Douglas v. U.S. Dist. Court*,
 495 F.3d 1062 (9th Cir. 2007)......................................................21

*Elliott v. Weinberger*,
 564 F.2d 1219 (9th Cir. 1977)......................................................26

*FCC v. Fox Television Stations, Inc.*,
 567 U.S. 239 (2012)....................................................................23

*Hernandez v. Tanninen*,
 604 F.3d 1095 (9th Cir. 2010)......................................................31

*Karnoski v. Trump*,
 926 F.3d 1180 (9th Cir. 2019)......................................................31

*In re Kirkland*,
 75 F.4th 1030 (9th Cir. 2023) ......................................................37

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)..................................................................28

*LA Alliance for Human Rights v. County of Los Angeles*,
  14 F.4th 947 (9th Cir. 2021) ......................................................3, 9, 35

*Lake Luciana, LLC v. Cnty. of Napa*,
  2009 WL 3707110 (N.D. Cal. Nov. 4, 2009) ........................................29

*Lasar v. Ford Motor Co.*,
  399 F.3d 1101 (9th Cir. 2005).....................................................24, 26

*Lindsey v. Normet*,
  405 U.S. 56 (1972)....................................................................25

*In re Mersho*,
  6 F.4th 891 (9th Cir. 2021) ..............................................................37

*Middlesex Cnty. Ethics Comm. v. Garden State Barr Ass'n*,
  457 U.S. 423 (1982)...................................................................29

*Mine Workers v. Bagwell*,
  512 U.S. 821 (1994)...................................................................26

*New York v. United States*,
  505 U.S. 144 (1992)...................................................................33

*Pennhurst State School & Hospital v. Halderman*,
  465 U.S. 89 (1984)....................................................................33

*In re Philippine Nat'l Bank*,
  397 F.3d 768 (9th Cir. 2005).....................................................31, 38

*Rizzo v. Goode*,
  423 U.S. 362 (1976)...................................................................33

*In re Roman Catholic Diocese of Albany*,
  745 F.3d 30 (2d Cir. 2014) ...........................................................31

*Rynearson v. Ferguson*,
  903 F.3d 920 (9th Cir. 2018)..........................................................30

ix

*Taggart v. Lorenzen*,
   587 U.S. 554 (2019)........................................................................23

*Taylor v. Hayes*,
   418 U.S. 488 (1974)........................................................................24

*In re Temple*,
   851 F.2d 1269 (11th Cir. 1988).......................................................27

*In re United States*,
   791 F.3d 945 (9th Cir. 2015)...........................................................34

*United States v. Powers*,
   629 F.2d 619 (9th Cir. 1980).....................................................23, 25

*Valenzuela-Gonzalez v. U.S. Dist. Court*,
   915 F.2d 1276 (9th Cir. 1990).........................................................22

*In re Van Dusen*,
   654 F.3d 838 (9th Cir. 2011)...........................................................22

## Constitutional Provisions

U.S. Const. Amend. X....................................................................7, 33

## Statutes

28 U.S.C. § 1291.................................................................................38

28 U.S.C. § 1651.................................................................................21

Cal. Gov. Code § 54953(a) ................................................................16

Cal. Gov. Code § 54963(a) ................................................................32

## Other Authorities

Los Angeles Charter § 242 ................................................................33

x

## INTRODUCTION

The district court (Carter, J.) has sua sponte expanded the scope of an ongoing contempt proceeding to include topics related to a pending California state-court action—all because the court read about a decision in that case in the *L.A. Times*. The court will hold a hearing tomorrow morning to decide whether to hold the City of Los Angeles in contempt over what was said during two conferences with counsel in closed sessions of the City Council, and attorneys for the City may be called to testify. The City's assertion of attorney-client privilege, deliberative-process privilege, and legislative privilege over what was said in those closed sessions is the subject of ongoing state-court litigation regarding California's Brown Act. The district court's actions directly threaten to trample the City's rights and cause irreparable harm.

This matter is critically urgent. Absent immediate relief from this Court, the City is staring down the barrel of civil and potentially criminal contempt sanctions without knowing what it has been accused of doing wrong, and the district court is poised to force the City to disclose confidential and privileged information about closed sessions of the City Council. The City has repeatedly asked the district court to clarify the basis

1

of these new contempt charges or explain the jurisdictional basis for inquiring into an issue committed to another sovereign's judiciary, but in vain. The City and its employees also will be placed in the impossible position of having to disclose confidential information about closed sessions of the City Council—information that is impermissible to disclose under California law—and thereby waiving a series of privileges, or else not defend against the district court's threat of contempt sanctions. And to make matters worse, the district court has taken the extraordinarily unusual step of summoning the top federal and county prosecutors in Los Angeles to the contempt hearing. This Court should issue a writ of mandamus directing the district court to vacate its orders impermissibly expanding the scope of the contempt hearing. And to ensure that the Court has adequate time to consider this petition, it should administratively stay the February 10 contempt hearing.

This case is now in its sixth year. In 2020, the LA Alliance for Human Rights asserted a raft of claims challenging the City of Los Angeles's homelessness policies. In 2021, the district court issued a sweeping injunction requiring the City to put $1 billion into escrow for homelessness initiatives and to offer shelter to all homeless residents within 180 days.

2

This Court vacated that injunction, holding it bore no relation to the Alliance's actual claims and was supported almost entirely with extra-record evidence (chiefly newspaper articles) dug up by the district court. *LA Alliance for Human Rights v. County of Los Angeles*, 14 F.4th 947 (9th Cir. 2021).

On remand, the Alliance and the City entered into a settlement agreement that called for the City to create thousands of new shelter and housing opportunities and to reduce the number of homeless encampments, among other things. That agreement has become a platform for the district court to dictate homelessness policy to the City. In 2025 alone, the court presided over two lengthy evidentiary hearings that amounted to full trials; the second one (which began in November 2025 and remains ongoing) threatens to hold the City in contempt for an ever-growing list of vague reasons. The City has appealed from three separate orders the district court has issued and today filed its opening brief in those three consolidated appeals. Nos. 25-4623, 25-6760, 26-221. Although the City does not make the request lightly, the City submits in that brief not only that the challenged orders should be reversed but also

3

that the district court's inappropriate and irregular approach to this case justifies reassignment to a different district judge on remand.

This petition addresses the district court's latest expansion of the ongoing contempt proceedings. Those proceedings began in November 2025 after a monitor appointed by the court said the City had not promptly cooperated with him. (The appointment of that monitor is the subject of one of the City's three pending appeals, and this Court granted an emergency motion to stay his appointment pending appeal. No. 25-6760 Dkt. 25.1.) The district court has repeatedly enlarged the scope of the contempt proceedings, most recently in a pair of sua sponte orders focusing on issues that are already being litigated in state court and that the district court read about in the *L.A. Times*. The City has been accused in that separate action of violating California's Brown Act by holding closed sessions of the City Council to discuss issues relating to the settlement agreement in this case. In that ongoing proceeding, which has not reached a final judgment (which would be subject to appeal), the City has defended the closed sessions, including by invoking the attorney-client privilege and the deliberative-process privilege.

4

The City cannot defend itself against charges of supposed misconduct in connection with the ongoing state-court proceeding without forfeiting the privilege issues that are currently being litigated there. The district court responded to the City's objections and requests for clarification of what the City is accused of doing not by meaningfully clarifying its order but instead by scheduling a contempt hearing solely on this new issue for February 10. And the court has, without any explanation, requested the presence of the top federal and state prosecutors in Los Angeles (and directed the parties to serve them with its order setting the hearing). The City requested a stay of this hearing, but the district court declined to address the request, effectively denying it.

This Court should stop the hearing in its tracks. The district court has violated the City's due-process right to fair notice because it has never stated the basis of the charges against the City. Anyone charged with contempt has a right to know what he supposedly did wrong, but the district court has refused to state its case. It has gestured at a supposedly false "representation" about a City Council "vote," but didn't cite anything or explain what the statement might be; the City has no idea. And the problem isn't just that the district court has refused to explain

what the City may have done wrong. Each potential basis for this expanded contempt is deeply troubling.

To the extent that the basis is the City's alleged noncompliance with the Brown Act, the district court has no jurisdiction to adjudicate that issue and doing so would impermissibly interfere with pending state-court proceedings. The parties in this case gave the district court limited jurisdiction to enforce their settlement agreement, not the limitless power to police compliance with state law. And even when they otherwise possess jurisdiction, federal district courts generally have no power to interfere with ongoing state litigation. The state court's resolution of the Brown Act issues isn't final, and the City will appeal from the decision once it is final (which will automatically stay the ruling pending appeal). The district court's contempt hearing threatens to demolish the City's appellate rights in state court.

To the extent that the district court seeks to have the City defend the unspecified representations about what happened during the closed City Council meetings, the City could do so only by forgoing the privilege objections that it is currently litigating in state court and disclosing the contents of the closed sessions (which California law prohibits). In other

6

words, the only way the City could defend itself against accusations of misrepresentations about what happened in those sessions is by forsaking the very privilege that it means to defend in state court. But the district court evidently aims to coerce City employees to reveal what was said in those closed sessions—an attempt at coercion made all the more troubling by the court's request that top prosecutors attend the hearing.

To the extent the district court wishes to decide whether the City Council was required to have a formal vote to approve one of the plans related to the settlement in the case, the proceedings will interfere with the City's ability to structure its own internal affairs. Nothing empowers the court to dictate legislative procedures to the City. If the court is contemplating ordering the City to follow different procedures to address encampment reductions, that would be a clear violation of the anti-commandeering principle of the Tenth Amendment.

The orders under review are the latest chapter in the saga of a district court that has lost sight of its role in enforcing the terms of the parties' settlement agreement and the limited powers of an Article III judge. Even after this Court admonished the district court not to invent new theories not raised by the parties or to engage in extra-record research to

support them, the district court persisted in doing precisely that. Sua sponte instituting contempt proceedings after reading in the *L.A. Times* about a non-final ruling in a separate state-court case is not now and never has been the proper role of a federal judge.

This Court should issue a writ of mandamus directing the district court to vacate its January 14 and February 4 orders expanding the scope of the contempt hearing. And to ensure that it has adequate time to consider this petition, this Court should administratively stay the hearing on those orders before that hearing commences at 9:00 a.m. on February 10.

## STATEMENT OF THE CASE

**A.** **After the City is sued over its homelessness policy, the district court orders the City to set aside $1 billion, and this Court stays and then vacates the order.**

In 2020, the LA Alliance for Human Rights, a group formed predominantly by business and property owners, sued the City and County of Los Angeles, claiming their policies had exacerbated problems caused by homelessness, including crime and fires. Other local organizations, including the Los Angeles Community Action Network, intervened in the

8

case, which (they argued) might affect their rights under a settlement agreement with the City. 1App1; 1App23.

In January 2021, the district court sua sponte ordered the City, County, Alliance, and Intervenors to brief "all equitable remedies available to the Court that would require the City . . . to take action to provide relief to the homeless community." *LA Alliance*, 14 F.4th at 953-54. The Alliance construed the court's order as an invitation to move for a preliminary injunction. The court granted the motion, ordering "the escrow of $1 billion to address the homelessness crisis, offers of shelter or housing to all unhoused individuals in Skid Row within 180 days, and numerous audits and reports." *Id.* at 952.

This Court stayed and ultimately vacated the injunction, holding that "the district court's order [wa]s largely based on unpled claims and theories," which were supported only by the court's "impermissibl[e] resort to independent research and extra-record evidence." *LA Alliance*, 14 F.4th at 952. Because "the district court granted relief based on claims that Plaintiffs did not allege, supported by novel legal theories that Plaintiffs did not argue, or against Defendants against whom the claim was not pled," the injunction was unlawful. *Id.* at 957.

9

**B.    The parties settle, but their settlement agreement becomes a wellspring of further litigation that has led to three appeals to this Court.**

On remand, the Alliance and City entered into a settlement agreement.  1App143.  The parties agreed, among other things, that the Alliance would dismiss its claims with prejudice, 1App159, and that the City would negotiate with the Alliance over a plan "for encampment engagement, cleaning, and reduction," 1App152.  After significant negotiations, the City agreed that it would remove 9,800 tents, makeshift shelters, cars, and RVs by June 30, 2026.  1App252; 1App259.  The district court approved the settlement agreement in June 2022.  1App170.

Since then, though, the district court has continued to treat this case like active litigation, holding 40-plus hearings, status conferences, and other proceedings.  The court has insisted on attempting to actively influence the City's homelessness policy, even if it has "a great chance of reversal."  7App1624.  For example, the court warned in January 2025 that "2025 w[ould] be the year of action taken by the Court" and expressed "hope" that it would "either have the idiocy or courage to act."  2App482.  Last year was, in fact, marked by considerable "action" on the

10

part of the district court—action that has led to three appeals to this Court.

**1.** After the Alliance filed a series of motions claiming the City had not complied with the parties' settlement agreement, *e.g.*, 2App342, the district court stated that it could "make [City officials'] lives miserable" by, among other things, "impos[ing] a receivership," 7App1560. The court also told the City officials that it "want[s] two more years of jurisdiction . . . through the [2028] Olympic Games" in Los Angeles because "I don't trust you as an institution." 7App1561. Shortly after that hearing, the court ordered an evidentiary hearing on settlement compliance. 3App484. That hearing, which amounted to a full-blown trial, spanned seven court days in May 2025.

In June 2025, the district court cited "decades" of perceived policy failures to address homelessness in an order holding that the City had breached the settlement agreement in four ways. 4App474. The court ordered various remedies, including the appointment of a monitor who would verify the City's data, "oversee compliance," and "ask the hard questions on behalf of Angelenos." 4App803; 4App807. The court ordered the parties to meet and confer to select a monitor, subject to the Court's

11

approval. 4App802. And it invited the Alliance and Intervenors to seek attorneys' fees "[a]s a sanction for the City's noncompliance." 4App805. The City appealed from the order. 4App809.

2. The Alliance and Intervenors did, in fact, move for fees, and the district court awarded them almost $2 million. 5App1243. The court began its order by relying once again on some of the extra-record materials that had led this Court to vacate the preliminary injunction in 2021. 5App1246. After citing more than a dozen news articles, the court determined the Alliance and Intervenors "deserve to be compensated" because this litigation "brought about significant and material benefits to the Los Angeles community." 5App1251. The City appealed from the fees order. 5App1129.

3. The parties complied with the district court's order by jointly proposing a monitor. 4App813. But the district court criticized the parties' proposal, 4App825-827, and instead encouraged the parties to select Daniel Garrie, whom it had called several days before the status conference about the monitor role, 4App915. After City Council meetings didn't result in Garrie's approval, the court unilaterally appointed him anyway.

4App907-909. The City appealed from the order appointing Garrie as monitor. 4App910.

Notwithstanding that appeal, Garrie filed his first status report on November 3. 4App917. In the report, Garrie complained about the City's request that he contact the City's counsel for information instead of directly contacting City officials or employees. 4App918; 4App928; 4App939-945. In response to Garrie's report, the court ordered the City to show cause why it shouldn't be held in contempt. The district court began the show-cause hearing by discussion a news article describing the fees the City's outside counsel charges, 5App1099, and ordered the City to publicly file its contracts with outside counsel, 4App1011.

The City filed an emergency motion with this Court seeking a stay of the monitor order and the contempt proceedings. This Court granted the motion in part, staying the monitor order but permitting the district court to hold contempt proceedings. No. 25-6760 Dkt. 25.1. This Court also later consolidated the City's three appeals relating to settlement compliance, fees, and monitor appointment.

13

**C.** **In the course of an ongoing contempt proceeding, the district court sua sponte raises issues relating to a separate state-court proceeding that it read about in the newspaper.**

Contempt proceedings—which amount to a second trial within a year—have been held intermittently in the district court since mid-November 2025. Those proceedings were launched with an order on November 7 directing the City to "show cause why it should not be held in contempt for the issues raised in" reports filed by the monitor and special master chosen by the court, which "detail[ed] delays in the City of Los Angeles's" obligations under the parties' settlement agreement and the court's order deciding the City had breached that agreement. 4App972.

The City has repeatedly objected to the threat of contempt sanctions absent a clear explanation of the charges against it, and it has also repeatedly asked for clarification of the issues to be addressed in the contempt hearings. 4App1008, 5App1232, 5App1238, 6App1488, 6App1497. The district court's consistent response to these objections and inquiries has been to further expand the scope of the contempt hearing. In a November 14 order, the court stated that the basis for the contempt hearing was its "concern[] that the City has demonstrated a continuous pattern of delay stretching back in time far further than the issues raised in the

14

Special Master and Monitor's Reports." 5App1189. The court said it would consider "past instances of delay in complying with the Court's orders as a basis for holding the City in contempt," attached a document from early 2024, and called for the issuance of subpoenas to witnesses who could testify about that document. 5App1190. The court also stated the contempt hearing would "cover whether the City has complied with the obligations of Section 7.1 of the Settlement Agreement," which calls for the City to report certain figures in quarterly status reports. 5App1190-91.

The City objected again and sought further clarification, explaining, among other things, that vague references to past "delay" did not give the City an adequate understanding of the charges leveled against it, and that there was no basis for holding a contempt hearing to address the City's compliance with the monitor-appointment order, which had already been stayed by this Court. 5App1233-34; 5App1239-40.

The district court held several days of the evidentiary hearing in November, December, and January. At the January 12 hearing, the court announced that it had learned of the *CANGRESS* state-court litigation from the *L.A. Times*. 6App1392-93. The City explained that it was

15

"premature" to discuss *CANGRESS* because the issue had not been finally resolved; the trial court had not even issued a judgment, and the appeal had not commenced. 6App1398-1400. Yet the district court two days later issued an order expanding the hearing's scope again. This time, the court stated that, "[b]ased upon newly reported information, there is reason to believe that the City of Los Angeles may have engaged in additional, previously unknown misconduct related to the 2022 settlement agreement when the City knowingly, willfully, and intentionally misrepresented material facts to the Court." 5App1285.

The district court cited "reports published in the mainstream media," including one from the *L.A. Times* (attached to its order), and the "ruling" of a state trial-court judge in *CANGRESS v. City of Los Angeles* (also attached to the order) describing a "violation of the Brown Act." 5App1285-86. The Brown Act generally requires the meetings of city councils to be open but permits closed sessions to discuss privileged information (e.g., about litigation strategy in pending cases). Cal. Gov. Code § 54953(a). The court in *CANGRESS* decided a City Council meeting addressing the reduction of encampments under the settlement agreement in this case did not address litigation strategy and should

16

have been held in public. 5App1292-93. Even though the dispute is whether the session should have been open or closed (not whether the City validly approved the underlying plan), the district court expressed "concern[] about the City's representation that the City Council had passed the homeless encampment reduction plan" and "add[ed] this new factual allegation to the current [contempt] proceeding" and directed the City "to prepare itself to respond to this new allegation" as well." 5App1285-86.

The City objected on January 20 to this further expansion of the contempt proceedings. It explained that the ruling in *CANGRESS* has not been reduced to a final judgment; that the City intends to appeal from any judgment that issues; and that, by interfering in that separate litigation, the court was requiring the City to choose "between (1) effectively giving up its right to appeal in the *CANGRESS* litigation by disclosing matters it contends are privileged, or (2) forgoing its right to fully defend itself in the contempt proceedings in this Court." 6App1489. The City submitted the district court should abstain from any interference in the state-court proceedings until they had run their course. 6App1489-90. In the alternative, the City urged the court to "clarify the new scope of

17

these proceedings"; the City explained that although the court had referred to a "representation" by the City, it "did not identify a specific representation, when any such representation was made, or who made it on the City's behalf." 6App1490. Without that information, the City objected, it would "be deprived of a fair opportunity to investigate the facts and prepare its defense against a finding of contempt." 6App1490.

The district court did not directly rule on this objection. Instead, on February 4, the court set a hearing for February 10 at 9:00 a.m. and stated that this "contempt hearing shall focus solely on the alleged Brown Act violation and potential misrepresentations made to the Court regarding the encampment reduction resolution," with further proceedings on other topics to be held later. 6App1492. The court also requested the attendance of the Mayor, the City Council President, the CEO of the Los Angeles Homeless Services Authority, First Assistant U.S. Attorney Bill Essayli, and District Attorney Nathan Hochman. 6App1493. Later that day, the court directed the parties to serve its order on Mr. Essayli and Mr. Hochman. 6App1494.

The City promptly objected to this order and sought a stay of the February 10 hearing because the court's order "deprives the City of due

18

process and fair notice of the basis of the purported contempt, sets a hearing that will interfere with a pending case in the court of another sovereign, improperly seeks privileged information, and appears to inject the threat of criminal prosecutions into the proceedings by requesting the attendance of the top federal and local prosecutors in Los Angeles." 6App1498. The City explained, among other things, that the court "still has not identified any representations that will be at issue in the upcoming hearing"; in fact, the City had no idea what representations the court could have in mind because "the City is not aware of . . . any representations made by the City regarding a City Council vote." 6App1499. Intervenors responded that they do not oppose the City's request for a stay to the extent it relates to the Brown Act litigation, but that the proceeding can move forward as it relates to the City's representations about the approval of the encampment reduction plan. 7App1648. Intervenors requested that attorneys from the City Attorney's office and the City Administrative Officer be available to testify at the hearing. 7App1652.

The district court did not respond to the City's first objection. On February 9, the court denied the City's stay request and clarified only that the hearing would involve an alleged "misrepresent[ation] [of] a

19

material fact . . . concerning action taken by the Los Angeles City Council on or about January 31, 2025," without specifying what representation is at issue, who made it, and where it was made. 7App1671-72. The contempt hearing relating to the *CANGRESS* litigation is scheduled to go forward at 9:00 am on February 10, and the district court has directed that "[t]he parties should be prepared to proceed with testimony on February 10 if, after hearing from counsel, the Court determines that is appropriate." 7App1672.

## STATEMENT OF THE ISSUES

Whether the district court has deprived the City of fair notice of the charges against it in the contempt hearing scheduled for February 10 and whether there is any lawful basis, consistent with the Constitution, the court's limited jurisdiction, and comity with state courts, for the district court to adjudicate issues that are being litigated in a pending state-court case.

## RELIEF SOUGHT

This Court should issue a writ of mandamus directing the district court to vacate its January 14 and February 4 orders expanding the scope of the contempt hearing. To ensure that the Court has adequate time to

consider this petition, it should administratively stay the February 10 hearing to the extent it relates to those orders.

## LEGAL STANDARD

This Court considers five factors in determining whether to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651:

1. The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.
2. The petitioner will be damaged or prejudiced in a way not correctable on appeal.
3. The district court's order is clearly erroneous as a matter of law.
4. The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
5. The district court's order raises new and important problems, or issues of law of first impression.

*Douglas v. U.S. Dist. Court*, 495 F.3d 1062, 1065-66 (9th Cir. 2007) (per curiam) (quoting *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977)).

Only "the third factor, clear error as a matter of law, is a necessary condition for granting a writ of mandamus"; the "remaining *Bauman* factors, while useful as an analytical framework, seldom yield 'bright-line

distinctions.'" *In re Van Dusen*, 654 F.3d 838, 841 (9th Cir. 2011); *see also Valenzuela-Gonzalez v. U.S. Dist. Court*, 915 F.2d 1276, 1279 (9th Cir. 1990) ("no single factor is determinative, and all five factors need not be satisfied at once") (citations omitted).

## REASONS FOR GRANTING WRIT RELIEF

The *Bauman* factors support immediate relief from this Court. The district court has clearly erred as a matter of law in denying the City fair notice of the contempt charges and potential sanctions. That due-process violation will have devastating consequences on the City's ability to protect its interests in parallel state-court litigation and to safeguard its privileges. Because the orders under review are only the latest in the long line of orders manifesting the district court's extreme disregard of the limits on its authority and the City's rights, and because mandamus is the only effective remedy, this Court should issue the requested writ of mandamus.

## I. The district court denied the City due process by refusing to explain the basis of its contempt charge.

The order at issue satisfies the indispensable factor for mandamus relief because the district court deprived the City of its right to fair notice before a contempt proceeding. "A fundamental principle in our legal

system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

Those principles apply with full force in the context of contempt. The notice must be sufficient to "inform the contemnor of the nature of the charge and enable the contemnor to prepare a [specific] defense." *United States v. Powers*, 629 F.2d 619, 625 (9th Cir. 1980). The notice also must alert the contemnor of the "possible types of[] sanctions." *Cole v. U.S. Dist. Court for Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004).

Such notice is indispensable whether a court ultimately imposes civil or criminal contempt sanctions. *E.g.*, *Cole*, 366 F.3d at 821. Because even "civil contempt is a severe remedy," "principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (cleaned up). The Due Process Clause's guarantee of adequate notice is "essential in view of the heightened potential for abuse posed by the contempt power," such that "the provision of these procedural protections accords with our historic notions of elementary

23

fairness." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005) (quoting *Taylor v. Hayes*, 418 U.S. 488, 500 (1974)).

The district court violated that constitutionally required guarantee. In its January 14 order, relying on "reports published in the mainstream media" the court expressed "concern[]" that the City had violated the Brown Act and had falsely represented that the City Council "voted to pass" the settlement agreement's encampment-reduction plan. 5App1285-96. The City objected that the court's order "did not identify any specific representation, when any such representation was made, or who made it on the City's behalf." 6App1490. The court ignored that objection, issuing an order on February 4 scheduling the hearing on February 10 that repeated the same allegations from the January 14 order and doubling down on February 9 while still not identifying any specific representations that could form the basis for contempt. 6App1492; 7App1671.

The district court has kept the City entirely in the dark about the basis for the alleged contempt. As far as the City knows, no one speaking on behalf of the City has ever represented to the court that the City Council "voted," in closed session or otherwise. to approve the encampment-

24

reduction plan. 5App1286. The City is aware of only one representation to the court, which occurred on April 4, 2024, regarding the presentation and approval of the encampment-reduction plan: that "[t]he 9,800 encampment reduction plan and milestones were presented to the City Council on January 31, 2024, which approved them without delay." 1App259. That representation says nothing about a vote of the City Council.

The district court's shoot-first, ask-questions-later approach to setting a contempt hearing has put the City in the untenable position of attempting to mount a defense when it has no idea what statement is at issue—who said something potentially false, where, and under what circumstances. The court's orders come nowhere close to "inform[ing] the [City] of the nature of the charge and enabl[ing] the [City] to prepare a [specific] defense." *Powers*, 629 F.2d at 625. That woefully inadequate notice has hampered the City's due-process right to assert "every available defense" at the hearing scheduled tomorrow. *Lindsey v. Normet*, 405 U.S. 56, 66 (1972).

The lack of fair notice is even more dangerous here because the district court has steered the hearing directly into criminal contempt by

adding charges based on "'completed act[s] of disobedience'"—an alleged violation of an open-meetings law and a past statement that someone made somewhere. *Mine Workers v. Bagwell*, 512 U.S. 821, 828 (1994). But the orders provide no notice of the possible sanctions, which will affect whether the City is "entitled to the full panoply of procedural protections that are normally reserved for defendants charged with a criminal offense, such as an independent prosecutor, proof beyond a reasonable doubt, and a jury trial." *Lasar*, 399 F.3d at 1110. And a threat of criminal prosecution hangs in the air, now that the district court has summoned to the hearing District Attorney Hochman, the official who is charged with enforcing Brown Act violations, along with the top federal prosecutor in Los Angeles, First Assistant U.S. Attorney Bill Essayli.

The lack of constitutionally adequate notice is grounds for mandamus relief. As this Court has held, "mandamus lies both to compel compliance with due process requirements and to provide the court jurisdiction 'to declare the due process requirements applicable to [the challenged] proceedings.'" *Elliott v. Weinberger*, 564 F.2d 1219, 1226 (9th Cir. 1977), *rev'd in part on other grounds sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979); *see also, e.g., In re Am. Med. Sys., Inc.*, 75 F.3d 1069,

26

1086 (6th Cir. 1996) (granting mandamus because defendant's "due-process rights were violated" when district court refused to give notice and an opportunity to be heard); *In re Temple*, 851 F.2d 1269, 1272-73 (11th Cir. 1988) (same).

This Court should exercise that power to prevent a clear infringement of the City's constitutional right to know the specific allegations against it and mount an appropriate defense.

## II. The City is likely to suffer irreparable harm that cannot be corrected on appeal.

The district court's refusal to clarify the basis of the purported contempt is preventing the City from adequately protecting important rights. The right to fair notice and an opportunity to be heard comes before all others—that right is *how* a party asserts its other rights. While being cagey as to what, exactly, the City could have done wrong, the orders gesture in three directions, all of which would be unacceptable. By shrouding the charges in ambiguity, the district court has created an unacceptable risk that the City won't be able to safeguard the integrity of the existing state-court proceedings, prevent the disclosure of privileged information, and vindicate the City Council's prerogatives to structure

27

its own proceedings. Mandamus relief is appropriate because none of these harms can be undone after the fact.

**1.** After reviewing "reports published in the mainstream media" and a non-final ruling from the Los Angeles County Superior Court, the district court expressed concern that the City may have acted "in violation of the Brown Act," which generally requires city councils to hold open hearings. 6App1492 (quoting 5App285-86). That issue could not possibly be a basis for civil contempt. The district court has limited ancillary jurisdiction only to enforce the terms of the parties' settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994). That agreement did not give the district court a limitless mandate to police the City's compliance with state laws, much less empower the district court to conduct contempt proceedings that piggyback off any state-court ruling against the City. Mandamus exists for cases like these, where the district court has threatened to exceed the "lawful exercise of its prescribed jurisdiction." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004).

Abstention principles further support granting mandamus relief. There is a "strong federal policy against federal-court interference with

28

pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Barr Ass'n*, 457 U.S. 423, 431 (1982). The state-court ruling that the closed sessions were not privileged is not even final. 5App1294. The City objected to CANGRESS's proposed judgment and writ of mandate, and that objection is pending before the court. 6App1504. If the objection is overruled, the City will appeal from the judgment, which would result in an automatic stay of the order until the appeal is final. *See Daly v. San Bernardino County Board of Supervisors*, 11 Cal. 5th 1030, 1052 (2021) (mandatory injunction resulting from adjudication of Brown Act violation automatically stayed pending appeal).

The district court wishes to hold a contempt hearing on whether the City complied with the Brown Act that *leaps ahead* of the ongoing state-court proceedings—the only judiciary with jurisdiction to decide those state-law issues in the first place. *Lake Luciana, LLC v. Cnty. of Napa*, 2009 WL 3707110 (N.D. Cal. Nov. 4, 2009) (abstaining from deciding whether defendant had complied with Brown Act). Because the California courts alone have the power to determine whether the City has complied with the Brown Act, the district court has no basis to wield

contempt to "interfere in the procedures by which states administer their judicial system and ensure compliance with their judgments." *Rynearson v. Ferguson*, 903 F.3d 920, 926 (9th Cir. 2018). Yet the City has been unable to secure a decision on its abstention arguments, despite multiple attempts, 6App1488, 6App1497, because of the district court's refusal to give fair notice of the charges or to address the City's objections.

**2.** The district court has accused the City of misrepresenting what occurred during the City Council's closed session. That accusation puts the contempt hearing on a path to destroy the City's ability to appeal from the not-yet-final order of the Los Angeles County Superior Court, or else not defend itself in this proceeding. To prove that it accurately represented the events in closed session, the City would have to produce evidence about the discussions that took place in the closed session. And Intervenors have already indicated that they plan to call attorneys for the City Attorney's office and the City Administrative Officer to testify. 7App1652. The City asserts privilege over this evidence for multiple reasons, including the attorney-client privilege, the deliberative-process privilege, the legislative privilege, and the official-information privilege. 6App1505-08. While that invocation of privilege is hotly disputed in the

30

case pending in state court, California has adopted procedural protections that ensure that no evidence will be disclosed until the appellate process runs its course. *Daly*, 11 Cal. 5th at 1052.

No remedy can correct the harm that will befall the City if it is "'erroneously required to disclose privileged materials or communications'" because of the district court's focus on what was said during the Council meeting. *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010); *see Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019) ("unique features" of the deliberative-process privilege warranted mandamus vacating discovery order). As the Second Circuit has observed in granting mandamus relief, "timing matters: Once the 'cat *is* out of the bag,' the right against disclosure cannot later be vindicated." *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 36 (2d Cir. 2014) (cleaned up).

The City also cannot adequately protect its privileges during a contempt hearing focused on the contents of privileged City Council meetings. For one thing, the City shouldn't need to "'choose between being in contempt of court and violating [the] law.'" *In re Philippine Nat'l Bank*, 397 F.3d 768, 774 (9th Cir. 2005). This dilemma "'clearly constitutes severe prejudice that could not be remedied on direct appeal.'" *Id.* For

31

another thing, the City cannot control whether its employees choose to disclose privileged information on threat of contempt sanction. The orders thus put the City's employees in an impossible position because they could potentially face discipline for disclosing "confidential information that has been acquired by being present in a closed session" when the City Council has not "authorize[d] disclosure of that confidential information." Cal. Gov. Code § 54963(a).

**3.** The final premise of the orders expanding the scope of the contempt hearing is the district court's apparent belief that the City Council could approve the encampment-reduction plan only through a formal "vote." 6App1492 (quoting 5App1285). As the City explained in its objection to the proposed judgment and writ of mandate in the *CANGRESS* action, "the Encampment Reduction Plan . . . did not require a formal vote of the City Council to effectuate approval." 6App1507. But the more fundamental problem is that federal courts have no authority to sit in judgment of whether legislative bodies have followed their own procedures.

The contempt hearing is on a collision course with constitutionally grounded principles of federalism. The City Council holds "the exclusive

power to organize its business, prescribe the rules of its proceedings and preserve order at its meetings." Los Angeles Charter § 242. Yet the district court appears to be threatening to hold a contempt proceeding on whether the City Council could approve a plan only through a formal vote. If that is what the court's opaque order means to charge, any attempt to commandeer the local legislative process to require a vote for the plan would violate the Tenth Amendment. *New York v. United States*, 505 U.S. 144, 161 (1992).

The Supreme Court has found it "difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law," contrary to "principles of federalism." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984). And that intrusion on the inner workings of the City Council would irreparably harm the Council's ability to determine its own procedures and would be uncorrectable on a later appeal. *Rizzo v. Goode*, 423 U.S. 362, 380 (1976).

In short, the problem here isn't merely that the district court hasn't stated the basis of the contempt hearing. Any possible basis for contempt would lead the court to transgress other important constraints, including

33

its limited jurisdiction, the comity owed to pending state-court proceed-ings considering the City's privileges, and the federalism buffer that allows cities to structure their own internal affairs.

## III. The district court has persistently disregarded the adversarial process and the City's rights.

The district court's sua sponte decision to introduce vague grounds for contempt after it "bec[a]me aware of reports published in the main-stream media" is part of a longstanding pattern of extra-judicial research. 5App1286. The district court's ceaseless resort to the newspaper as a call to action in this litigation and its disregard of the party-presentation principle make mandamus relief particularly warranted here. When an error is "not an isolated occurrence," this Court "place[s] significant weight on this factor" because it demonstrates "a continuing need for relief." *In re United States*, 791 F.3d 945, 960 (9th Cir. 2015).

Earlier in this same case, this Court warned that district courts may not do their own research to direct litigation. When this Court vacated the district court's "sweeping" preliminary injunction requiring the City and County to escrow $1 billion to address the homelessness crisis and make offers of shelter or housing to all homeless people on Skid Row within 180 days, it explained that the injunction was based on the district

34

court's own "unpled claims and theories" and that the court had "impermissibly resorted to independent research and extra-record evidence" such as newspaper articles. *LA Alliance*, 14 F.4th at 952. The district court later confessed that, when it issued the preliminary injunction that this Court ultimately vacated, it "had a pretty good idea . . . [it] was going to get reversed" but acted anyway because it was frustrated that "[n]othing was happening" and believed it had "no place else to go" to alleviate homelessness. 7App1623.

Reversal did nothing to diminish the district court's evident belief that reporting in newspapers and extra-record research should drive the direction of these proceedings:

- The district court has proclaimed its responsibility to "get involved when [it] read[s] something ridiculous" about the City in a "Los Angeles Times article." 7App1570.

- The court's order awarding attorney's fees and costs to the Alliance and Intervenors began with an introduction faulting the City for a supposed "lack of oversite [sic] and corruption." 5App1246. The court supported that narrative by citing 16 news articles despite this Court's warning not to go outside the record.

35

5App1245-52. The court even block-quoted the preliminary-injunction order that this Court vacated, including the assertion (accompanied by a footnote citing three news articles) that "[r]ecent investigations into City-funded housing projects for the homeless demonstrate a lack of government oversight has allowed the proliferation of corruption." 5App1246.

- During the contempt proceedings, the court brought up a news article describing fees charged by the City's outside counsel, 5App1099, and ordered the City to publicly file its contracts with outside counsel, 4App1011.

- The court has otherwise made clear that its understanding of the case is rooted in its beliefs about the City's supposed decades-long institutional failure to address homelessness. 4App747; 7App1624; 2App357; 1App135. Those beliefs are largely untethered to evidence that was presented by the parties or that the City had a meaningful opportunity to challenge, but are instead rooted vaguely in "articles that go back in the 1980s." 2App335; accord 7App1533.

In short, the district court has not followed this Court's instruction to stick to the issues and record as framed by the parties. To the contrary, the district court has made clear its desire to take extreme measures that it acknowledges rest on shaky legal footing, declaring that "2025 will be the year of action taken by the Court if needed," that it will "take the result of that from the Ninth Circuit," 2App482, and that it would not be "complicit" in the homelessness crisis even if its unorthodox decisions have a "great chance of reversal," 7App1624.

Relief is especially warranted because this recurring error is now arising in the contempt context. The district court's repeated resort to its own research and extra-record evidence satisfies not only the fourth but also the fifth *Bauman* factor—whether its orders raise new and important problems. Although the City need not demonstrate both factors because they are "often mutually exclusive," *In re Mersho*, 6 F.4th 891, 903 (9th Cir. 2021), this is an atypical situation where both are present because the oft-repeated error arises in a "new context," *In re Kirkland*, 75 F.4th 1030, 1051 (9th Cir. 2023). The district court is repeating its same error—but now in the contempt context that is especially prone to judicial abuse.

37

**IV.    The City has no other adequate means to obtain fair notice and defend itself in the expanded contempt proceeding.**

Mandamus is the only effective remedy left for the district court's stark departure from due process and its evident desire to probe issues that are off limits to federal courts.  The City has twice objected to the expanded contempt proceedings and requested notice from the court regarding the subject of those proceedings.  6App1488, 6App1497.  In responding to only the second request, the court refused to identify any particular statement or to ensure adequate review of the City's abstention, privilege, and federalism arguments before the court orders witness testimony that invades the City's rights.  7App1671-72.  The City also cannot take an appeal because there will be no final decision under 28 U.S.C. § 1291 "unless a contempt order is issued and sanctions have been imposed," at which point the contempt hearing may have already undermined the parallel state-court proceedings, the City's privileges, and the City Council's internal autonomy.  *Phillipine Nat'l Bank*, 397 F.3d at 774.

The City also can do nothing in the separate state-court proceeding to protect its interests while the district court from moving forward with the expanded contempt hearing.  While the *CANGRESS* judgment will likely be automatically stayed once the City appeals, *see Daly*, 11 Cal. 5th

at 1052, the state court cannot protect its own jurisdiction by enjoining the district court from proceeding any farther down this dangerous path, *see Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 706-07 (2002) (recognizing state court's limited ability to enjoin parallel proceedings in a separate jurisdiction).  As a result, the City's only viable option to obtain the relief it seeks is through this mandamus petition.

## CONCLUSION

This Court should issue a writ of mandamus directing the district court to vacate its January 14 and February 4 orders expanding the scope of the contempt hearing.  And to ensure that the Court has adequate time to consider this petition, it should administratively stay the hearing relating to those orders that is set to commence at 9:00 a.m. on February 10.

Dated: February 9, 2026 Respectfully submitted,

/s/ *Theane D. Evangelis*
Theane D. Evangelis

*Counsel for Petitioner*
*City of Los Angeles*

39

# CERTIFICATE OF RELATED CASES

Under Circuit Rule 28-2.6, the City of Los Angeles identifies *LA Alliance for Human Rights v. City of Los Angeles*, No. 25-4623; *LA Alliance for Human Rights v. City of Los Angeles*, No. 25-6760; and *LA Alliance for Human Rights v. City of Los Angeles*, No. 26-221 as proceedings related to this case.

This Court consolidated these three appeals, all of which challenge orders made by the same district court in the same case that gives rise to this mandamus petition.

Dated: February 9, 2026        /s/ *Theane D. Evangelis*
                              Theane D. Evangelis

                              *Counsel for Petitioner*
                              *City of Los Angeles*

## CERTIFICATE OF COMPLIANCE

This petition complies with Federal Rules of Appellate Procedure 21(d)(1) and 32(g) and Circuit Rules 21-2(c) and 32-3(2) because it contains 7,754 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

The petition's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) because the petition has been presented in 14-point New Century Schoolbook type.

Dated: February 9, 2026        /s/ *Theane D. Evangelis*
                                     Theane D. Evangelis

                                   *Counsel for Petitioner*
                                   *City of Los Angeles*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate ACMS system. I further certify that on the same day, I caused the petition to be served by email and by commercial carrier for next-day delivery on:

Matthew Donald Umhofer
Elizabeth A. Mitchell
UMHOFER, MITCHELL & KING LLP
767 S. Alameda Street, Suite 221
Los Angeles, CA 90017
213.394.7979
mumhofer@umklaw.com
emitchell@umklaw.com

*Counsel for Real Parties in Interest LA Alliance for Human Rights, Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karen Pinsky, Charles Malow, Charles van Scoy, George Frem, Gary Whitter, and Leandro Suarez*

42

Louis R. Miller
Mira Hashmall
Jason H. Tokoro
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, CA  90067
310.552.4400
smiller@millerbarondess.com
mhashmall@millerbarondess.com
jtokoro@millerbarondess.com

*Counsel for Defendant County of Los Angeles*

Carol A. Sobel
LAW OFFICE OF CAROL A. SOBEL
725 Arizona Ave.
Santa Monica, CA 90401
310.393.3055
carolsobel@ aol.com

Shayla R. Myers
Isabelle M. Geczy
LEGAL AID FOUNDATION OF LOS ANGELES
1550 West 8th Street
Los Angeles, CA 90017
(323) 801-7990
smyers@lafla.org
igeczy@lafla.org

Catherine Sweetser
SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Catherine.sdshhh@gmailcom

*Counsel for Intervenors Los Angeles Community Action Network
and Los Angeles Catholic Worker*

Brooke Weitzman
William Wise
ELDER LAW AND DISABILITY RIGHTS CENTER
1535 E. 17th Street, Suite 110
Santa Ana, CA 92705
bweitzman@eldrcenter.org
bwise@eldrcenter.org

*Counsel for Intervenor Orange County Catholic Worker*

I also caused the petition to be hand-delivered to the district court in Courtroom 10A, 411 West 4th Street, in Santa Ana.

Dated: February 9, 2026                    Respectfully submitted,

                                           /s/ *Theane D. Evangelis*_____
                                           Theane D. Evangelis

                                           *Counsel for Petitioner*
                                           *City of Los Angeles*

44