**No. 26-784**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE CITY OF LOS ANGELES

---

CITY OF LOS ANGELES,

*Petitioner,*

v.

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA,

*Respondent,*

LA ALLIANCE FOR HUMAN RIGHTS ET AL.,

LA CAN

LA CATHOLIC WORKER

*Real Parties in Interest.*

---

From the United States District Court
Central District of California
Case No. 2:20-cv-02291 | Hon. David O. Carter

---

## INTEVENOR/REAL PARTIES IN INTEREST ANSWERING BRIEF

---

Shayla R. Myers
LEGAL AID
FOUNDATION
OF LOS ANGELES
1550 W. 8th Street
Los Angeles, CA 90017
Tel: (214) 640-3983
smyers@lafla.org

Catherine Sweetser
SCHONBRUN SEPLOW
HARRIS HOFFMAN &
ZELDES, LLP
9415 Culver Blvd., #115
Culver City, CA 90232
Tel: (310) 396-0731
catherine.sdshhh@gmail.com

Carol A. Sobel
LAW OFFICE OF
CAROL A. SOBEL
725 Arizona Ave.
Santa Monica, CA 90401
Tel: (310) 393-3055
carolsobel@aol.com

*Counsel for Intervenor/Real Parties in Interest LA CAN and LA Catholic Worker*

# **TABLE OF CONTENTS**

I.   Introduction...................................................................................................1

II.   Statement of the Case ...................................................................................3

III.   Statement of the Issues ...............................................................................10

IV.   Grounds for Denial of the Writ of Mandamus .............................................10

     a.  The Court's Operative February 9, 2026 Order Does Not Impinge On The Brown Act Litigation .......................................................................10

     b.  The Court's Order is Not Clearly Erroneous as a Matter of Law ............13

         i.  The Court's orders, taken in the context of the litigation, provides adequate notice to the city............................................................16

         ii.  The City opened the door to questions about the approval of the ERP...................................................................................................20

V.   Conclusion ..................................................................................................24

CERTIFICATE OF COMPLIANCE.....................................................................25

CERTIFICATE OF SERVICE .............................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Bauman v. U.S. Dist. Court,*
    557 F.2d 650 (9th Cir.1977) ................................................................14

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ..................................................................1, 16

*Chevron Corp. v. Pennzoil Co.,*
    974 F.2d 1156 (9th Cir. 1992) ............................................................22

*Chiron Corp. v. Genentech, Inc.*
    179 F.Supp.2d 1182 (E.D. Cal. 2001) ....................................................23

*Douglas v. U.S., Dist. Ct. for Cent. Dist. Of Ca.,*
    557 F.3d 1062 (9th Cir. 2007) ............................................................14

*F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc.,*
    244 F.3d 1128 (9th Cir. 2001) ............................................................16

*In re Henson,*
    869 F.3d 1052 (9th Cir. 2017) ..................................................... 14, 16

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997) ............................................................22

*In re Van Dusen,*
    654 F.3d 838 (9th Cir. 2011) ............................................................14

*Karnoski v. Trump,*
    926 F.3d 1180 (9th Cir. 2019) ............................................................22

*Matter of Fischel,*
    557 F.2d 209 (9th Cir. 1977) ............................................................21

*United States v. Bilzerian,*
    926 F.2d 1285 (2nd Cir 1991) ............................................................22

ii

*Universal Oil Products Co. v. Root Refining Co.*
   328 U.S. 575 (U.S. 1946)................................................................... 16, 23


**Statutes**

Cal. Gov't Code § 54950 ............................................................................6

Cal. Gov't Code § 54963(a)......................................................................22

Cal. Gov't Code § 54960.1 .........................................................................8

**Other Authorities**

Los Angeles City Charter § 244................................................... 11, 18, 19

Los Angeles City Council Rules...............................................................19

## I.      Introduction

The district court (Carter, J.) is acting pursuant to its inherent authority to sua sponte question the veracity of statements made by the City of Los Angeles in a prior contempt proceeding. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The need for the inquiry arose after the City Attorney's office made a seemingly contrary statement in an ancillary action against the City that is currently pending in state court. Rather than provide the Court with an explanation of the contradiction, the City filed this petition for an extraordinary writ of mandamus to prevent the Court from conducting that inquiry. There is no basis for the Court to grant the City's petition.

The Court's current inquiry into the City of Los Angeles's conduct stems from a stipulation filed in this case in April 2024 to resolve a prior settlement enforcement action against the City. The prior enforcement action was based on the City's failure to comply with a material provision of the settlement. In the stipulation between the City and the LA Alliance, the City represented that the City Council of the City of Los Angeles approved an Encampment Reduction Plan (ERP) that it was required to approve by the terms of the settlement.

Ten months later, in response to an inquiry by Intervenors about the vote tally of that approval and an allegation that the City violated the state's Open Meetings Act when it approved the plan, the City Attorney's office responded that the City Council

1

did not, in fact, vote to approve the ERP. LA CAN subsequently filed a petition in state court, challenging the City's actions under the Brown Act. ("Brown Act Litigation").

In January 2026, the Court in this case became aware of the proceedings in state court after the state court ruled that the City did violate the Brown Act by discussing the ERP in closed session. As a result of that ruling, the district court in this case became aware of the City's seemingly conflicting statements in the two different court cases. In response, the Court expanded an existing contempt proceeding against the City to investigate "whether an authorized representative of the City of Los Angeles…willfully misrepresented a material fact or facts to this Court concerning action taken by the Los Angele City Council on or about January 31, 2025." 7App1672.

To avoid having to explain the City's seemingly conflicting positions in the two cases, the City has filed this writ of mandamus, asking this Court to save it from the district court's inquiry. But rather than rest on the Court's actual order to support its position, the City all but ignores a subsequent order issued by the Court the day the City filed this petition, clarifying that the Court is not investigating the City's possible Brown Act violations, but rather, limiting its investigation only to the veracity of the statements made by the City in January 2024 related to the approval of the ERP.

2

That inquiry falls well within the Court's inherent authority to investigate potential fraud on the court, and the line of inquiry being pursued by the Court stems from the City's own statements about what occurred during the closed session meeting. Yet relying almost exclusively on prior orders and ignoring the City's own disclosure of what happened in the closed session, the City argues that the Court cannot investigate the potential misrepresentations—now, or potentially ever.

There is simply no basis for the Court to grant the City's petition for a writ of mandamus. At bottom, the City's petition is little more than a last ditch effort to save its representatives from having to explain their positions to the Court. But that effort fails because it ignores the Court's most recent clarifying order and fails to identify an error of law, let alone a clear error as a matter of law that is necessary to support a writ of mandamus by this Court. The Court should deny the City's petition and allow the Court to proceed.

## II.    Statement of the Case

In 2020, a group of business and property owners in Skid Row, along with individual property owners and residents, filed the underlying litigation. 1App1. The LA Alliance alleged, *inter alia*, that the jurisdictions had allowed nuisances to exist in Skid Row by failing to clear homeless encampments and seeking an injunction to compel the clearing of encampments. *Id.* Petitioner LA CAN, a community based organization in Skid Row with hundreds of unhoused members, intervened in the

3

matter, based on their interest in protecting their unhoused members from increased criminalization and the loss of their belongings, along with LA Catholic Worker, another. 1App23.

The City ultimately settled with the LA Alliance in spring 2022. 1App143. As part of the settlement, the City agreed to construct new units to accommodate 60% of unsheltered persons and develop plans and milestones for meeting its shelter bed obligations. 1App152. As relevant here, City also agreed to "create plans and develop milestones and deadlines for … the City's plan for encampment engagement, cleaning, and reduction" in each council district and the city as a whole. *Id.,* Section 5.2(iv), (ii). The settlement provided that the case would be dismissed but requested the Court to retain jurisdiction to enforce the terms of the settlement. *Id.* The Court approved the settlement on June 14, 2022, incorporated the settlement into an enforceable order by the Court, and dismissed the case against the City. 1App170.

On February 2, 2024, the LA Alliance filed a motion for sanctions against the City of Los Angeles, alleging in part that the City had not timely fulfilled its obligations under the settlement agreement to create and approve the Encampment Reduction Plan (ERP), as required by Section 5.2 of the Settlement Agreement. 1App171. In the declaration in support of the motion, counsel for the LA Alliance stated that she had been informed that the City Council had considered and approved

4

the ERP on January 31, 2024 and she had been provided the plan on February 1, 2024. 1App178. The "milestone goals" she was provided were attached to her declaration. 1App178, 255. This was the first time that the City Council's consideration, let alone approval of the ERP, had been disclosed publicly.

Following a number of hearings on Plaintiffs' motion for settlement enforcement, the City and the Plaintiffs entered into a stipulation of facts related to the leadup to the approval of the ERP. In the stipulation, the City represented that: "**The 9,800 encampment reduction plan and milestones were presented to the City Council on January 31, 2024, which approved them without delay**." 1App259. The stipulation was signed by Scott Marcus, Chief Assistant City Attorney, but the approved ERP was not filed with the stipulation. *Id.*

In October 2024, LA CAN sent a letter to the City regarding potential violations of the state's open meetings act, the Brown Act, related to the January 31, 2024 City Council meeting in which the City Attorney's office represented that the ERP was approved. 7App1654. In response to LA CAN's position that the City had violated the Brown Act by failing to disclose the City Council tally of the vote to approve the ERP, the City Attorney's office defended its failure to disclose the vote by representing to LA CAN that "no vote was taken" during the January 31, 2024 meeting. 7App1655.

In January 2025, LA CAN filed an action in Los Angeles Superior Court,

*CANGRESS v. City of Los Angeles*, ("Brown Act Litigation"), challenging in relevant part the City of Los Angeles's consideration of the ERP in closed session, which LA CAN maintained was a violation of the state's Open Meetings Act, the Ralph M. Brown Act, Ca. Gov't Code § 54950 *et seq.* In November 2025, the trial court held a trial on the merits and on January 5, 2026, issued a ruling in LA CAN's favor. The ruling was covered by the *LA Times*, which included facts about the City's apparent contradictory statements that the City Council had approved the ERP but that no vote had been taken to do so. 5App1299.

Less than a week later, the Court in this case held a hearing in an ongoing contempt proceeding related to the City's alleged violations of the Court's order incorporating the settlement agreement in the case. During the hearing, the Court informed the parties that he had become aware of the Brown Act Litigation. 6App1323:1-7 ("Is the Court supposed to accept this encampment reduction from the City—don't answer it now. I want to discuss this with you at 3:30 or 4:00.). The Court later explained his concern stemmed in part from the potential that ruling would invalidate the ERP approval, resulting in the City Council having to reconsider and approve the ERP in open session as a result of the ruling. Given that the approval of the ERP had formed the basis for many of the subsequent proceedings and City Council's prior delays in taking up other issues related to the settlement, the Court expressed concern that the possible invalidation of the approval

6

would impact the monitoring of the settlement, an issue squarely before the Court. "If I don't have, because of these Brown Act violations, an encampment resolution approved by the Council, how long is it going to take to get this back to the council for public hearing because it may be argued to the Court that I don't have an encampment resolution right now." 6App1393-94. *See also* 6App1403 (raising concerns about the consequences of the Brown Act for purposes of settlement enforcement).

The Court also raised a separate but related concern, that the *LA Times* reporting had suggested that the City Council had not actually approved the ERP because the City Council had not voted on the measure. The seeming contradictory statements raised concerns for the Court that the ERP was not approved and that the statements that it had were actually material misrepresentations to the Court in the course of prior enforcement proceedings. *See* 5App1299-1304.

Shortly thereafter, the Court issued an order regarding the potential Brown Act violations, ordering the parties to provide the Court with the briefing schedule in the Brown Act Litigation. 5App1285-86.

On February 4, 2026, as part of a scheduling order related to a pending motion by the City of Los Angeles, the Court informed the parties that the Court would move also forward with contempt proceedings against the City related to the potential Brown Act violation. 6App1492.

The Court's initial February 4, 2026 order was based on two concerns: 1) that the City's Brown Act violation would result in the ERP being vacated as a result of the violation—a well-known remedy under the Brown Act,—and that it would have ramifications for the LA Alliance litigation, given the prior settlement enforcement actions, and 2) that there were material misrepresentations that came to light as a result of the Brown Act Litigation, which was then reported in the press. *Id.*

On February 7, 2026, the City filed objections to the Court's order, arguing that that hearing was inappropriate, given the ongoing Brown Act Litigation. 6App1498. LA CAN filed a response to the City's objections, clarifying for the Court that the Brown Act Litigation would not have the effect of invalidating the approval of the Encampment Reduction Plan. 7App1645. Although the Brown Act allows a party to seek to invalidate the underlying action at issue upon a finding of a violation of the act*, see* Cal. Gov't Code § 54960.1, LA CAN had not sought to undo the underlying approval of the ERP. Instead, it was seeking other remedies, including declaratory relief that the City had violated the Brown Act and related prospective relief allowable under the Act. 7App1646-47. LA CAN also agreed that a stay regarding contempt stemming from the Brown Act violations was appropriate, but suggested that the Court could address its second concern, namely the veracity of the statements by the City's representatives to the Court that the City Council had

8

approved the ERP, despite subsequent representations by the City Attorney's office that no vote was taken. 7App1648-52.

On February 9, 2026, before the City's unilateral noon deadline, the Court issued a clarifying order. 7App1672-73. The Court's latest order clarifies that the focus of the hearing would not focus not on whether the City violated the Brown Act, but instead, on whether the City Council actually approved the ERP and if not, whether the City Attorney's office made material misrepresentations that it had. The explicit focus of the hearing was "whether an authorized representative of the City of Los Angeles…willfully misrepresented a material fact or facts to this Court concerning action taken by the Los Angeles City Council on or about January 31, 2025." 7App1672. The order went on to inform the parties that the Court would hear argument about how the contempt proceeding should proceed and the order of witnesses to be presented. 7App1673.

Less than four hours later, the City filed its emergency petition for writ of mandamus, asking this Court to administratively stay the hearing on February 10, 2026 and grant a writ of mandamus to prevent the Court from going holding the hearing at all. The petition makes only one reference to the Court's February 9, 2026 clarification, instead choosing to focus the entire petition on the Court's prior orders and the suggestion that the hearing would focus on the Brown Act Litigation and potential Brown Act violations. *See* City Petition for Writ of Mandamus at 19-20

9

(noting only that the Court denied the stay request and clarified only that the hearing would involve an alleged "misrepresent[ation of] a material fact. . . concerning action taken by the Los Angeles City Council on or about January 31, 2025").

On February 9, 2026, this Court denied the administrative stay but ordered Real Parties in Interest to file a response within seven days.

## III. Statement of the Issues

Whether the Court's January 14 and February 4, 2026 orders, as clarified by the February 9, 2026 order, indicating the Court's intention to inquire into the factual basis of the City's representation that the ERP was approved by the City Council, impinge on state court proceedings adjudicating whether the City Council violated the state's open meetings law by discussing the plan in closed session; and whether the Court's order was clearly erroneous as a matter of law.

## IV. Grounds for Denial of the Writ of Mandamus

### a. The Court's Operative February 9, 2026 Order Does Not Impinge on The Brown Act Litigation

The bulk of the City's argument in support of its petition for a writ of mandamus rests on the City's contention that the district court proceedings will impermissibly infringe on the Brown Act Litigation currently pending in LA Superior Court. This argument fails for a number of reasons. First, the issues before the state court are wholly separate and distinct from the ones at issue in this litigation. Specifically,

10

the Brown Act Litigation challenges the propriety of legality of convening a closed session to discuss and enact a policy mandated by the settlement agreement in this case. On the other hand, the issue the Court in this case is concerned with is the potential misrepresentation by the City Attorney's office that the City Council approved the ERP. That issue is explicitly *not* before the state court. In fact, when petitioner LA CAN raised the argument that the closed session allowed the City to hide a potential violation of the City Charter and council rules by approving the ERP without a vote, the City argued that the violation of the charter and city council rules were a "red herring" and not at issue in the state court proceedings. Intervenors and Real Parties in Interest's Motion for Judicial Notice (RJN), Exh. A at 18-19.

Second, and most important, the hearing ordered by the Court on February 9, 2026 did not concern the City's possible violations of the Brown Act. While it is true that when the Court initially learned of the Brown Act Litigation, the Court raised concerns about Judge Kin's ruling and its potential implications for the LA Alliance litigation. The Court's inquiry into the Brown Act Litigation stemmed from a justified concern that a ruling could invalidate the ERP, the approval of which had been the subject of a number of court proceedings to date, including the contempt proceedings in June 2025 that are the subject of a separate Ninth Circuit appeal. The Court's stated concern was that the invalidation of the ERP approval would have consequences for the underlying litigation, particularly if either party then argued

11

that the ERP was also invalid for purposes of the LA Alliance litigation. Accordingly, the Court focused its attention on the potential implications of violations of the Brown Act for the LA Alliance Litigation. 7App1671-72.

In response to the Intervenor's assurance that any remedy ordered by the state court in the Brown Act litigation would not invalidate the proceedings—and the City and Intervenors' shared concern that a ruling related to the Brown Act litigation could impede those proceedings, the Court clarified that it would not move forward with contempt proceedings related to any potential violation of the Brown Act. *Id.*

Yet that significant recalibration of the issues before the Court in the February 9, 2026 order is barely acknowledged in the City's petition for writ of mandamus. The City makes almost no mention of the Court's clear concession to the concerns raised by the City and shared by the Intervenors, that focusing on the Brown Act could impede the underlying litigation. Instead, throughout the petition, the City continues to refer to the hearing as "contempt hearing related to the CANGRESS litigation." Pet. at 20.

Regardless of whether a court hearing on the City's compliance with the Brown Act would have been warranted, that is not the hearing the Court clarified on February 9, 2026 would be conducted the next day. As of February 9, 2026, *before* the City filed the petition for an extraordinary writ of mandamus, the only issue the Court was considering was whether the City made material misrepresentations to the

12

Court when it stated that that the City Council approved the ERP without delay. 7App1672.

The City's almost complete disregard for the Court's February 9, 2026 clarifying order undermines any argument the City has that the Court intended to interfere with the state court proceedings—which make up the bulk of the City's petition for a writ of mandamus.

### b. The Court's Order is Not Clearly Erroneous as a Matter of Law

Considering the order the Court actually issued, the City's petition for a writ of mandamus still should be denied, because the City does not show that the Court clearly erred as a matter of law in ordering the hearing to go forward.

As the City outlines in its petition, in deciding whether to grant extraordinary mandamus relief like the relief requested by the City, this Court considers five factors:

(1) whether the petitioner has other adequate means, such as a direct appeal, to attain the relief he or she desires;

(2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal;

(3) whether the district court's order is clearly erroneous as a matter of law;

(4) whether the district court's order makes an "oft-repeated error," or "manifests a persistent disregard of the federal rules"; and

13

(5) whether the district court's order raises new and important problems, or legal issues of first impression.

*In re Van Dusen*, 654 F.3d 838, 841 (9th Cir. 2011)*, citing Bauman v. U.S. Dist. Court,* 557 F.2d 650, 654–55 (9th Cir.1977).

Not all of the factors are equal. The third factor, whether the Court's order is "clearly erroneous as a matter of law" is a necessary condition for granting a writ of mandamus." *In re Van Dusen*, 654 F.3d at 841 (holding that although the Court favored the petitioner's interpretation of the law over the district court's, that the district court's interpretation was not a clear enough order to meet the "extraordinary" bar necessary to grant mandamus review). *See also Douglas v. U.S., Dist. Ct. for Cent. Dist. of Ca.*, 557 F.3d 1062, 1066-67 (9th Cir. 2007) (per curium).

This Court's analysis should begin and end with the third factor, because the Court's order is not clearly erroneous as a matter of law. "Clear error is a highly deferential standard of review in the mandamus context, an order is clearly erroneous for purposes of a mandamus petition if we are left with the definite and firm conviction that a mistake has been committed." *In re Henson*, 869 F.3d 1052, 1058 (9th Cir. 2017) (internal citations removed). "Clear error is a highly deferential standard of review. Mandamus will not issue merely because the petitioner has identified legal error. "Rather," the court must have "a definite and firm conviction that the district court's interpretation ... was incorrect." *Id.*

Here, the City comes nowhere near meeting the "clearly erroneous" standard for the Court's order regarding the February 10, 2026 hearing, given the Court's February 9, 2026 clarification.

Following the disclosure of facts in a separate court proceeding that appeared to contradict statements made in these court proceedings, the Court raised questions about this apparent contradiction to the parties. The Court first raised the issue at a hearing on January 12, 2026 when the Court uncovered the inconsistency. Then, the Court raised the issue again and clarified its position in subsequent orders on January 14 and February 4, 2026. In response to the City's objections and Intervenors' response, the Court issued a further order on February 9, 2026, clarifying that the hearing was not related to violations of the Brown Act but instead ordering an evidentiary hearing to resolve the issue of the City's apparent contradiction and to determine whether "an authorized representative of the City of Los Angeles…willfully misrepresented a material fact or facts to this Court concerning action taken by the Los Angele City Council on or about January 31, 2025." 7App1671. Ordering an evidentiary hearing to inquire into the veracity of statements submitted to the Court is not, as the City contends, "a clear error of law." On the contrary, it is well within the Court's authority, especially given the current state of the proceedings, to investigate potential contemptuous misconduct by the City. "All federal courts are vested with inherent powers enabling them to manage

15

their cases and courtrooms effectively and to ensure obedience to their orders. *F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc*., 244 F.3d 1128, 1136 (9th Cir. 2001). *See also Chambers*, 501 U.S. at 44. This necessarily includes investigating potential misrepresentations made to the Court. As the U.S. Supreme Court has made clear, "a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud. *Id. See also Universal Oil Products Co. v. Root Refining Co*. 328 U.S. 575, 580 (U.S. 1946).

In an attempt to meet the necessary threshold issue of a clear error as a matter of law, the City makes a number of arguments about the Court's order, cobbling together a parade of horribles to meet the high bar of "clear error." The City fails to do so however, because standing alone and taken together, nothing about the Court's order should leave this Court with the required "definite and firm conviction that the district court" acted in error. *In re Henson*, 869 F.3d at 1058.

i. **The Court's orders, taken in the context of the litigation, provides adequate notice to the city**

The City argues that the Court clearly erred as a matter of law by failing to inform the City of the nature of the "contempt charge" to enable it to prepare for a defense. Writ Petition at 23. As an initial matter, the City is not challenging a finding of contempt, but rather, the process chosen by the Court to investigate

16

potential contemptuous conduct by the City. At bottom, the City is arguing it is entitled to extraordinary mandamus to prevent the due process afforded by the Court.

But the City's feigned ignorance about the basis for the hearing is disingenuous at best. The Court's orders are clear that the Court is concerned about whether the City's authorized representatives misrepresented to the Court that the ERP was approved by the City Council on January 31, 2025, in light of subsequent disclosures by the City Attorney's office that the City Council did not actually vote to approve the ERP. While the Court could have been more explicit in its orders, taken in the context of the litigation, the Court's orders provide more than sufficient notice to the City to prepare for the hearing.

When the Court first raised concerns about the Brown Act Litigation, the discussion with the Court centered in park on whether the ERP was approved, given there was no vote. During the January 14, 2026 hearing in which the Court first raised the issue, Intervenors' counsel explicitly flagged this point to the Court in response to the Court's questions about the relevance of the Brown Act litigation to the underlying LA Alliance litigation. *See e.g.*, 6AR1400. ("What I would say is relevant to these proceedings is that the underlying representation by the City of Los Angeles in a declaration to this court and then in subsequent testimony was that the City of Los Angeles, the city council, approved the encampment reduction plan, and

17

yet when the petitioner, intervenors in this case, asked the City Clerk for the vote, the City attorney's office represented that no vote was taken.").

The Court later summarized that he was concerned that the ERP was not properly approved because no vote was taken and that if the ERP was invalidated as a result of the ERP, the City Council would slow walk approval of the ERP, raising similar issues to the ones that had occupied the Court's time for months. 6AR1403:4-24. Far from having "no idea what statement is at issue," Pet. at 25 this is the context in which the Court's January 14, February 4, and February 9 orders must be read, and taken together, the City had ample evidence of "who said something potentially false, where, and under what circumstances." *Id.*

The City also takes issue with the fact that representatives of the City never explicitly stated that the ERP was "voted on" by the City Council and only that the ERP was approved. But that is precisely the issue at the evidentiary hearing—to determine if the ERP actually was approved. The Los Angeles City Charter expressly provides that "(e)xcept as otherwise provided in the Charter, action by the Council shall be taken by a majority vote of the entire membership of the Council." Los Angeles City Charter, Section 244, Quorum and Vote Necessary to Take Action, RJN, Exh. B. Moreover, the operative City Council Rules provide in relevant part that the City Council must vote to take any actions. Rules of the Los Angeles City Council, Rule 25, RJN, Exh. C. The City's statements have to be taken in the context

18

they are made.  In this case, a lawyer for the City represented that the City Council approved the ERP.  The legal context in which that statement arises gives rise to an understanding that the ERP was "approved" given the only process outlined in the City Charter and City Council rules for that approval, via a vote of the City Council.

Yet subsequent representations by the City Attorney's Office, which came to the Court's attention as a result of reporting by the *LA Times* related to the Brown Act litigation, raised concerns for the Court because the City Council did not, in fact, vote to approve the ERP as required by the City Charter and City Rules.  That begs the question whether the ERP was actually approved, as an attorney for the City represented in a stipulation to the Court.  That is the question raised in the operative February 9, 2026 order.

To the extent the order could have stated more clearly it was concerned that specific individuals made material misrepresentations to the Court, the Court's decision to remain circumspect about stating that allegation explicitly in a publicly-available court filing does not deprive the City of due process.  On the contrary, the Court has steadfastly avoided outright naming individuals or suggesting in more explicit terms that they misrepresented facts to the Court—strong accusations against any officer of the Court or City official.  The Court's instinct to avoid these accusations in court filings and instead, to allow the City to provide an explanation

19

for the seemingly inexplicable contradiction shows judicial restraint rather than, as the City argues, depriving the City of its due process rights.

### ii.    The City opened the door to questions about the approval of the ERP

The City completely misses the mark when it argues that it is a clear error of law for the Court to require the City to disclose the process by which the ERP was approved, given its own disclosure that the ERP was "approved without delay" by the City Council but also was not actually voted on by the City Council. Far from a "clear error of law," the City itself opened the door to questions about how the ERP was approved when it put both those statements in the record, first to defend against a prior settlement enforcement action and then to defend against allegations that it violated the Brown Act.

In response to the Court's inquiry into the contradiction between these two statements, the City has taken an untenable and absolute position related to the January 31, 2025 meeting. Specifically, the City argues that because the City Council held a closed session on January 31, 2024, nothing that occurred in the closed session can be disclosed to the Court. According to the City, everything that occurred during the meeting is protected from disclosure, and the City need not answer any questions about what actually occurred during the meeting. Putting aside the question of whether attorney-client privilege or any other privilege would

20

actually cover the discussion of the ERP (a fact the City contends is before the state court in the Brown Act Litigation), the only relevant question is whether those privileges cover disclosure of the process used by the City Council to approve the ERP in light of the fact that the City—of its own volition—already represented to the Court that the ERP was approved and facts about that approval process. The answer is no.

First, the fact of the City Council's approval of the ERP and the process by which the City Council approved the ERP is not protected by either attorney-client privilege or the deliberative process privilege. "An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction." *Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977). What is at issue is *not* communications between the City Attorneys' office and the City Council, but rather, the process by which the City Council approved the ERP. Likewise, even assuming the deliberative process privilege would apply to the City Council's consideration of the ERP (an issue the Court need not decide), the deliberative process privilege covers the process of deliberation, not the actual approval, which is all that is at issue in the hearing. "For the deliberative process privilege to apply, the material must be 'predecisional' and 'deliberative.'" *Karnoski v. Trump*, 926 F.3d 1180, 1204 (9th Cir. 2019) (quoting *In re Sealed Case*,

21

121 F.3d 729, 737 (D.C. Cir. 1997). Here, the issue is not about the deliberation, but rather, the decision itself.

But even if the process by which the City Council approved the ERP were protected by one of the privileges or fell within the Brown Act's prohibition on disclosing the contents of a closed session, Ca. Gov't Code 54963(a), the City itself already rang that bell. In the course of this litigation, the City represented to the Court 1) that the ERP was presented to the City Council, which approved it without delay; and 2) details about the process by which the ERP was approved, e.g., that it was not voted on by the City Council. Both of these disclosures, which would appear to contradict each other, open the door for the City to explain the process by which the ERP actually was approved. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). The City's attempt to use the facts of the approval of the ERP to stave off sanctions in this case and prevent a Brown Act lawsuit in another case, yet refuse to answer any questions that would allow the Court to verify the veracity of those statements, especially in light of the apparent contradiction, is almost definitionally the use of the privileges as "a sword and a shield." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir 1991). The Court is well within its authority to prohibit it. Even assuming, *arguendo,* that the process by which the City Council approved the ERP could constitute a privileged communication as the City contends, "a party . . . may not selectively disclosed privileged communications that it

considers helpful while claiming privilege on damaging communications relating to the same subject." *Chiron Corp. v. Genentech, Inc.* 179 F.Supp.2d 1182, 1186 (E.D. Cal. 2001).

Far from a "clear error as a matter of law," the Court did not commit an error when it issued an order to convene a hearing to address the question of the veracity of material statements made by the City to fend off another motion for sanctions, especially because those statements appear to contradict other statements made by the City to fend off yet other litigation. And if that hearing requires the disclosure of facts to support the City's own representation that it took a specific course of action, the Court's determination that the City should face questions only about the basis upon which the City's authorized representative made his statements is not clear error. It is no error at all.

"The power to unearth such a fraud is the power to unearth it effectively." *Universal Oil Products Co.* 328 U.S. at 580. The City cannot hide behind the Brown Act, or worse, the Brown Act Litigation, to prevent the Court from interrogating whether the City made material misrepresentations about facts that the City itself chose to disclose. It certainly is not clear error as a matter of law for the Court to determine that doing so is necessary to preserve the integrity of the court proceedings.

23

## V.  Conclusion

The City has not met its burden of showing the Court committed clear error by ordering an evidentiary hearing to question the City about the bases for its prior representations to the Court.  This Court should deny the City's petition for a writ of mandamus.

Dated:  February 17, 2026          By:  *s/ Shayla R. Myers*

                                                   Shayla R. Myers
**LEGAL AID FOUNDATION OF LOS ANGELES**

*Counsel for Intervenors and Real Parties in Interest Los Angeles Community Action Network and Los Angeles Catholic Worker*

24

**CERTIFICATE OF COMPLIANCE**

This brief complies with Federal Rules of Appellate Procedure 21(d)(1) and 32(g) and Circuit Rules 21-2(c) and 32-3(2) because it contains 5833 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) because the petition has been presented in 14-point Times New Roman type.

Dated: February 17, 2026

By: *s/ Shayla R. Myers*
Shayla R. Myers

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, I electronically filed the foregoing INTEVENOR/REAL PARTIES IN INTEREST ANSWERING BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I further certify that on the same day, I caused the answer to be served by email and by messenger service for next-day delivery on:

Hydee Feldstein Soto
Valerie Flores
Arlene N. Hoang
Jessica Mariani
CITY ATTORNEY'S OFFICE
200 North Main Street
City Hall East, 6th Floor
Los Angeles, CA  90012
213.978.7508

Theane D. Evangelis
Marcellus McRae
Bradley J. Hamburger
Daniel R. Adler
Patrick J. Fuster
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA 90071-3197
213.229.7000
tevangelis@gibsondunn.com

*Counsel for Petitioner City of Los Angeles*

26

I further certify that on the same day, I caused the answer to be served by email on:

Louis R. Miller
Mira Hashmall
Jason H. Tokoro
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, CA 90067
310.552.4400
smiller@millerbarondess.com
mhashmall@millerbarondess.com
jtokoro@millerbarondess.com

*Counsel for Defendant County of Los Angeles*

Matthew Donald Umhofer
Elizabeth A. Mitchell
UMHOFER, MITCHELL & KING LLP
767 S. Alameda Street, Suite 221
Los Angeles, CA 90017
213.394.7979
mumhofer@umklaw.com
emitchell@umklaw.com

*Counsel for Real Parties in Interest LA Alliance for Human Rights, Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karen Pinsky, Charles Malow, Charles van Scoy, George Frem, Gary Whitter, and Leandro Suarez*

Brooke Weitzman
William Wise
ELDER LAW AND DISABILITY RIGHTS CENTER
1535 E. 17th Street, Suite 110
Santa Ana, CA 92705
bweitzman@eldrcenter.org
bwise@eldrcenter.org

*Counsel for Intervenor Orange County Catholic Worker*

27

I also caused the answer to be hand-delivered to the district court in Courtroom 10A, 411 West 4th Street, in Santa Ana.

Dated: February 17, 2026

By:    *s/ Shayla Myers*

Shayla Myers