Case No. 26-784

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LA ALLIANCE FOR HUMAN RIGHTS, a non-profit corporation,

*Plaintiff-Appellee*,

v.

CITY OF LOS ANGELES, a municipal entity; COUNTY OF LOS ANGELES, a municipal entity,

*Defendants-Appellants*,

Appeal from the United States District Court, for the Central District of California, Case No. 2:20-cv-02291 DOC (KES)
The Honorable David O. Carter, United States District Judge

## APPELLEE'S RESPONSE TO APPELLANT'S PETITION FOR WRIT OF MANDAMUS AND EMERGENCY MOTION FOR IMMEDIATE STAY

Matthew Donald Umhofer (CA SBN 206607)
  mumhofer@umklaw.com
Elizabeth A. Mitchell (CA SBN 251139)
  elizabeth@umklaw.com
UMHOFER, MITCHELL & KING LLP
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027

February 17, 2026     *Attorneys for Plaintiff-Appellee,*
*LA Alliance for Human Rights*

## TABLE OF CONTENTS

**Page**

RESPONSE TO APPELLANT'S PETITION FOR WRIT OF MANDAMUS
AND EMERGENCY MOTION FOR IMMEDIATE STAY....................................1

    A.    Brief Statement of Facts and Procedural History..................................1

    B.    The City's Due Process Objections Are Invented ...............................7

    C.    Younger Abstention is Inapplicable and Unwarranted .........................8

    D.    The City Is Attempting to Avoid Accountability By Targeting
           the District Court .................................................................................11

CERTIFICATE OF COMPLIANCE......................................................................15

# TABLE OF AUTHORITIES

**CASE**                                                           **PAGE(S)**

*Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd*,
   880 F.2d 176 (9th Cir. 1989) ................................................................12

*AmerisourceBergen Corp. v. Roden*,
   495 F.3d 1143 (9th Cir. 2007) ...............................................................9

*In re Bundy*,
   840 F.3d 1034 (9th Cir. 2016), *subsequent mandamus proceeding*,
   852 F.3d 945 (9th Cir. 2017) ................................................................14

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)................................................................................12

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004)..............................................................................14

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ................................................................11

*Green v. City of Tucson*,
   255 F.3d 1086 (9th Cir. 2001) ..............................................................10

*LA Alliance for Human Rights v. County of Los Angeles*,
   14 F.4th 947 (9th Cir. 2021) .................................................................13

*Potrero Hills Landfill, Inc. v. Cnty. of Solano*,
   657 F.3d 876 (9th Cir. 2011) ............................................................1, 11

*Smith v. Mulvaney*,
   827 F.2d 558 (9th Cir. 1987) ...................................................... 12, 14

*Younger v. Harris*,
   401 U.S. 37 (1971)..................................................................................3

ii

## RESPONSE TO APPELLANT'S PETITION FOR WRIT OF MANDAMUS AND EMERGENCY MOTION FOR IMMEDIATE STAY

In its second emergency motion in this case in a matter of months, the City again seeks to prevent a hearing that this Court has already determined should proceed. The City now deploys *Younger* abstention as the latest reason for this Court to step in where it previously chose not to. But because the ongoing contempt hearing has not and will not "enjoin[ed] the [state] proceeding, or have the practical effect of doing so," *Younger* abstention is neither warranted nor required. *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 882 (9th Cir. 2011).

### A.    Brief Statement of Facts and Procedural History

The LA Alliance for Human Rights brought this case in 2020, faulting the City's constitutional and statutory failures on homelessness. In 2022, the City and the LA Alliance resolved the case, signing a Settlement Agreement that required the City to meet certain benchmarks and deadlines for bed creation and encampment reduction, and to report key metrics on a quarterly basis. (1App140.) The City proceeded to violate the Settlement Agreement immediately, which resulted in a stipulated settlement and sanctions in 2024. (1ResApp005.) The City's violations continued, which led to an evidentiary hearing, a court finding of several violations of the City's obligations, and an award of attorney's fees in 2025. (4App747, 4App1243.)

Later in 2025, a new set of City violations triggered a new evidentiary hearing, which is ongoing. (1ResApp006.) In the midst of that hearing, media reports revealed that a judge on the Los Angeles Superior Court had concluded that the City had violated the Brown Act through its closed-session approval of one the City's encampment reduction obligations under the Settlement Agreement. (Ruling on Verified Pet. for Writ of Mandate, *Cangress v. City of Los Angeles*, Case No. 25STCP00261 (L.A. Super. Ct. Jan. 5, 2006) ("Brown Act decision").)

On January 14, 2026, the district court issued an order (5App1285) that noted the issuance of the Brown Act decision and expressed concern that the facts found in the Brown Act decision raised questions about the accuracy of the City's representation to this Court that the "9,800 encampment reduction plan and milestones were presented to the City Council on January 31, 2024, which approved them without delay." (1ResApp004 at ¶ 8.) The district court observed that the city council's approval was "a critical and material issue before the Court" in this case. (5App1286.)

The Court then issued an order on February 4, 2026, setting a hearing re contempt on the issue of the alleged Brown Act violation and "potential misrepresentations made to the Court regarding the encampment reduction resolution." (6App1492.)

On February 7, 2026, the City filed objections to the hearing and asked the district court to stay the hearing, claiming the City was being denied notice and due process and seeking abstention under *Younger v. Harris*, 401 U.S. 37, 43 (1971). (6App1497.)

On February 9, 2026, the district court filed an order responding to the City's objections:

- stating that it "understands and appreciates the importance of protecting the integrity of all proceedings conducted before it and amends its notice with that responsibility in mind,"

- reiterating its concern that an "authorized representative of the City of Los Angeles may have willfully misrepresented a material fact or facts to this Court concerning action taken by the Los Angeles City Council on or about January 31, 2025;"

- noting that its "concern can best be resolved after the Court considers evidence that will clarify the facts related to that issue."

(1ResApp008-009.) The court also denied the City's request for a stay of the hearing and confirmed the hearing would proceed the following day.

The same day, the City filed the instant petition, asking this Court to intervene and issue an administrative stay that would prevent the district court from conducting a hearing to try to figure out whether it had been lied to by the City, and—

3

remarkably—asking this Court to reassign the case to another judge. (City's Pet. for a Writ of Mandamus ("Pet."), Feb. 9, 2026, Dkt. No. 1-1.)  This Court denied the stay that evening. (Order, Feb. 9, 2026, Dkt. No. 12-1.)

The hearing went forward on February 10, 2026. The hearing opened with the Court observing, "I want to ensure that all parties and intervenors are provided with due process and the opportunity to be heard." (1ResApp015.)  What followed was a litany of City objections to the proceedings, another City request to stay the hearing, and more than an hour of oral argument over the City's due process, privilege, and *Younger* complaints. (1ResApp015-047.) Following oral argument, the district court observed,

> I want to think about your arguments concerning *Younger* [absention] for a few moments, and certainly courtesy to the circuit. So I want a little bit of time for reflection. This has raised the issue of whether, in fact, a vote was even taken. I tentatively believe that this can be resolved without intruding on the State Brown Act litigation pending before Judge Kin, but I very much appreciate your oral arguments today, and I want to reflect on that once again after your arguments to the Court today.

4

(1ResApp056-057.) After taking a 50-minute recess, the district court said the following:

> After thoughtful deliberation and consideration, this Court still believes it can resolve the misrepresentation issue without intruding into the State Brown Act litigation if the testimony in this Court is focused and limited and respectful of any applicable privilege claim. … We're going to get the facts out on this limited issue, but what's really an issue here is a very narrow issue that I've said repeatedly can be resolved quickly and is separate and distinct from the state court proceedings, that privileges can be protected by focusing on this very narrow issue.

(1ResApp068.) The hearing then proceeded, with testimony from one City witness. In response to certain questions, City objected on the basis of privilege and instructed the witness not to answer. When those objections and instructions were made, the district court did not order the witness to answer, and instead allowed the witness not to answer and took the objection under submission. (*See, e.g.*, 1ResApp082-083 ("Q. How did the city council approve the plan? [Counsel for the City]: Objection, Your Honor. I would instruct the witness not to answer to the extent the answer to that question -- THE COURT: I'm not going to sustain it, but I'm going to take that

under submission. You don't have to answer that at the present time. I want to think about that question.").) The district court also took great care to protect privileged communications. (1ResApp084 ("I want to be very careful about any disclosure of any communications, but an act is substantially different. And when this question is asked, I'm going to limit your answer to your subjective or your meaning or mindset about what approval meant. I want to be very careful that your answer doesn't involve communication with members of the council. Is that clear? And if not, I'll restate that.").) The court did not rule on the objections during the February 10 hearing, and the privilege questions raised by the objections remain under submission to the district court. The hearing is set to continue on February 18, 2026.

As the above recitation—and the transcript of the February 10 hearing—make clear, the City's concerns about the hearing are overwrought and misplaced. While the City claims that "the district court is poised to force the City to disclose confidential and privileged information about closed sessions of the City Council," that simply did not happen—to the contrary, the district court took great care concerning the City's privilege objections and did not force the City to disclose privileged information. The district court's cautious, respectful-of-the-privilege approach exposes the City's alarmist, speculative assertions that undergird this petition. The sky has not fallen. And in the event the district court requires the City to answer a question despite a privilege-based instruction not to answer, the City

6

witness can refuse to answer, and if the district court imposes consequences for any City refusals to answer, the City can appeal those sanctions. What it cannot do is preempt the district court's fact-finding.

## B. The City's Due Process Objections Are Invented

Similarly flawed are the City's due process complaints. The City claimed to be unclear about what statements would be the subject of the hearing. In both its two orders (recounted above), and at the outset of the hearing, the court was crystal clear:

> The issue regarding potential misrepresentations made by the City to this Court initially arose when the City attorney seemed to represent to this Court that a vote had been taken in closed session by the City Council on the encampment reduction plan on January 31st of 2024. This representation was seemingly soon contradicted when the City attorney represented that there was nothing to report from the City Council's closed session that occurred that day. There's been subsequent testimony before this Court that, in fact, no vote was taken. These contradictions and others lead to this inquiry about whether a vote was, in fact, taken concerning the encampment reduction plan in closed session on January 31st, 2024.

7

(1ResApp014-015.) The City responded by immediately identifying the statement that was the subject of the district court's concern:

> [T]here is really no reason for us to be having this proceeding so we're just still in the dark about where in the record that supposed representation was. So we haven't found one. We -- it's our position we never made any representation about a vote. Our best guess was a joint stipulation that was filed on April 4th, 2024, which, of course, the Court is familiar with where the parties said that 9,800 -- the 9,800 encampment resolution plan and milestones was [*sic*] presented to the City Council on January 31st, 2024 which approved them without delay.
>
> There's nothing about that statement that's untrue.

(1ResApp018-019.) Within minutes of the district court's opening comments, the City had "guessed" correctly about the very representation the district court identified. Because it was not guesswork—it was based on the notice already provided by the district court, which was adequate and sufficient.

### C. Younger Abstention is Inapplicable and Unwarranted

The City's last stand is its call for *Younger* abstention. But as the February 10 hearing transcript makes clear, the hearing did not and will not "have the practical

8

effect of enjoining, ongoing state court proceedings." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007). The district court's orders and the ongoing hearing do not threaten to stop the state court Brown Act litigation. Taking evidence concerning whether the Court was lied to by the City about what happened behind closed city council doors will have zero impact on the state court's consideration of the narrow Brown Act litigation issue: whether "the City's approval of the ERP and MOU during closed sessions on January 31, 2024, and May 1, 2024 violated the Brown Act." Brown Act Decision at 9 (5App1296.) Put differently, the relief that would be granted in this case concerning a City misrepresentation to the district court would not interfere in any way with very different question of whether the City should have made decisions in closed session. What the City actually posits is a *potential* for conflict between this case and the Brown Act litigation, which this Court has held is not enough:

> In short, as the Court has often repeated, the mere potential for conflict in the results of adjudications, is not the kind of interference that merits federal court abstention. Rather, the possibility of a race to judgment is inherent in a system of dual sovereigns and, in the absence of exceptional circumstances, that possibility alone is insufficient to overcome the weighty interest in the federal courts

9

exercising their jurisdiction over cases properly before them.

*Green v. City of Tucson*, 255 F.3d 1086, 1097 (9th Cir. 2001). To the extent there is a potential for duplication in the district court's hearing, that's not enough to require abstention. *Id.* ("Since the possibility of duplicative litigation is a price of federalism, the prospect of such duplication, without more, does not constitute interference with state court proceedings justifying a federal court's dismissal of a case properly within its jurisdiction.").

There is another reason abstention isn't required here: the state interest at stake here is not vital enough to trigger *Younger*. As this Court put it:

> To establish a vital interest in the state's judicial functions, an abstention proponent must assert more than a state's generic interest in the resolution of an individual case or in the enforcement of a single state court judgment. Likewise, a state's interest in a universal judicial value such as prompt resolution of cases is not cognizable for purposes of *Younger* abstention. Rather, the interest at stake must go to the core of the administration of a State's judicial system, and its importance must be measured by considering its significance broadly.

10

*Portrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 886 (9th Cir. 2011). The City makes no attempt to articulate the vital interest here and falls far short of "considering [the interest's] significance broadly" as required by this Court. The garden variety interests of a state judiciary to adjudicate cases or issue writs of mandates is not enough under *Younger*. *Id.* Because the City identifies no such vital interest, it cannot hope to succeed and the writ should be denied.

### D. The City Is Attempting to Avoid Accountability By Targeting the District Court

The tell in the City's petition is buried on page 4: the City is unhappy with the district court's efforts to hold the City accountable for its failures to comply with a landmark Settlement Agreement on homelessness and now wants to be rid of this pesky judge. (Pet. at 4 ("the district court's inappropriate and irregular approach to this case justifies reassignment to a different judge on remand").) But the district court has done nothing more than (i) hold hearings to enforce the terms of a Settlement Agreement the City voluntarily entered into, (ii) determine that the City has indeed violated the Agreement, repeatedly, and now, (iii) inquired into the City's lack of candor to the Court about a key element of the Settlement Agreement over which the City agreed the district court would exercise continuing jurisdiction. The district court has inherent authority to conduct such an inquiry. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("We hold that an attorney's reckless misstatements

11

of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power. [Such] a determination . . . rests in the sound discretion of the district court."); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (the inherent power of a federal court permits it "to control admission to its bar and to discipline attorneys who appear before it").

The City's strawman complaints about the district court judge—reading in the newspaper about another court decision and setting an evidentiary hearing to examine a potential misrepresentation in his own courtroom about a key settlement issue, holding hearings at Plaintiff's request to resolve allegations of violations of the settlement agreement, and resolving those allegations by, *inter alia*, ordering the parties to agree on a monitor already called for by the settlement agreement —fail to demonstrate "personal bias or [] unusual circumstances" required for reassignment. *Smith v. Mulvaney*, 827 F.2d 558, 562 (9th Cir. 1987) (citations omitted). Indeed, this Court reassigns district judges "only in rare and extraordinary circumstances" none of which exist in this case. *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd*, 880 F.2d 176, 191 (9th Cir. 1989). This is a complicated and high-profile case about a critical issue impacting the Los Angeles area. News articles abound and it is entirely proper to raise issues identified in the public sphere which may impact

12

the settlement agreement here—particularly when the City explicitly agreed to active judicial oversight and enforcement. (1App148 at § 2.) There is simply nothing improper about reading updates in the news and asking the parties about the truth of the contents or scheduling hearings to identify facts—a fact implicitly acknowledged by the City when it failed to cite a single case on point amongst its litany of complaints.[1]

It is worth underscoring the fact that nearly four years ago, **the City expressly agreed to this district judge exercising continued, active jurisdiction over the Settlement Agreement**, but clearly now regrets that decision. That regret has coincided with a more aggressive City litigation strategy that has forced the Plaintiffs and the district court to conduct lengthy evidentiary hearings that have resulted in several adverse rulings that have displeased the City. But displeasure with judicial scrutiny is simply not the kind of "unusual circumstances" that warrant the

---

[1] The City only cites this Court's opinion in *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, as critical of the district court's "independent research"—but there this Court was actually critical of the district court's apparent judicial notice of the *truth* of non-record matters rather than their existence. 14 F.4th 947, 957 (9th Cir. 2021) ("The district court relied on hundreds of facts contained in various publications for their truth, and a significant number of facts directly underlying the injunctive relief are subject to reasonable dispute."). Conversely, the City cannot and does not point to a single instance of the district court taking judicial notice of the truth of contested matters reported in the media since this Court's decision in 2021—well before any settlement agreement was entered into. And the City fails to cite a single case from any jurisdiction in which a district judge was faulted for inquiring into a party's lack of candor to the court based on another court's findings and media reports.

13

extraordinary step of reassignment. *Mulvaney*, 827 F.2d 558 at 562. And such displeasure certainly cannot clear the high bar for mandamus relief. *In re Bundy*, 840 F.3d 1034, 1040 (9th Cir. 2016), *subsequent mandamus proceeding*, 852 F.3d 945 (9th Cir. 2017) (mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes") (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). Because of this, the City's petition should be denied in its entirety.

DATED:   February 17, 2026          Respectfully submitted,

/s/ *Matthew Donald Umhofer*
UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer
Elizabeth A. Mitchell

*Attorneys for Plaintiff-Appellee,*
*LA Alliance for Human Rights*

14

## CERTIFICATE OF COMPLIANCE

I am the attorney for Plaintiff-Appellee LA Alliance for Human Rights. Pursuant to Federal Rules of Appellate Procedure ("Fed. R. App. P.") Rule 32(g), I certify that this brief complies with the word limit of Fed. R. App. P. Rule 21(d)(1) because it contains **3,103** words, excluding the items exempted by Fed. R. App. P. Rule 32(f). The brief's type size and typeface comply with Fed. R. App. P. Rules 32(a)(5) and (6).

DATED:  February 17, 2026

Respectfully submitted,

/s/ *Matthew Donald Umhofer*
UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer
Elizabeth A. Mitchell

*Attorneys for Plaintiff-Appellee,*
*LA Alliance for Human Rights*

15

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form15instructions.pdf](http://www.ca9.uscourts.gov/forms/form15instructions.pdf)

**9th Cir. Case Number(s)** | 26-784

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellee's Response to Appellant's Petition for Writ of Mandumus and Emergency Motion for Immediate Stay

**Signature** | Matthew Donald Umhofer          **Date** | Feb 17, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at [forms@ca9.uscourts.gov](mailto:forms@ca9.uscourts.gov)

---

**Form 15**                                                                 *Rev. 12/01/2018*